**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRIT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 26-70-1** |
| | : | |
| **ABRAHAM KAMARA** | : | |

# MEMORANDUM

**KEARNEY, J.** **September 10, 2026**

A Philadelphia man decided to rob two stores shortly before Thanksgiving last year. He walked into two different stores on two different days and walked out of each without paying for the products. The store cameras captured much of his conduct. The Grand Jury charged him with robbery interfering with interstate commerce and with using, carrying, and brandishing a firearm in relation to a crime of violence in each store. We proceeded to trial three months ago. The United States did not persuade a jury beyond a reasonable doubt as to guilt for the charged conduct at the first store. But the jury found the United States met its burden of proof as engaging in robbery interfering with interstate commerce as to the second store without finding he knowingly used or carried a firearm there. The man successfully argued the United States did not prove he brandished a firearm during a crime of violence during his robbery of the second store. The man now asks for a judgment of acquittal or new trial challenging the jury's findings as to use of threatened force or fear of injury during the second robbery given the jury found him not guilty for brandishing a firearm. He essentially ignores the reality a jury could find he threatened force or fear of injury without seeing the firearm in the second robbery. The jury could rely on the credibility of material eyewitnesses and the store's video recording as to second robbery but not the first. We are not persuaded by the man's arguments. We defer to the jury's findings. We deny Defendant's motion for acquittal or new trial.

## I. Evidence adduced at trial

The jury evaluated eyewitness testimony and video surveillance evidence concerning Philadelphian Abraham Kamara's November 23, 2025 and November 27, 2025 alleged robberies of two convenience stores in Philadelphia.

***November 23, 2025 SNIPES Robbery***

Abraham Kamara entered the SNIPES store located at 7702 City Avenue in Philadelphia around 4:25 P.M. on November 23, 2025.[1] Mr. Kamara grabbed merchandise from the shelves.[2] SNIPES Employee Tyhira Minor-Allen tried to stop Mr. Kamara from taking the merchandise.[3] Employee Minor-Allen swore under oath Mr. Kamara grabbed at something in his pants and lifted up his pants revealing a firearm.[4] She swore she saw the handle of the firearm.[5] She did not recall whether Mr. Kamara said anything to her.[6] Employee Minor-Allen then backed away from Mr. Kamara.[7] She allowed Mr. Kamara leave with the merchandise.[8]

Employee Minor-Allen locked the door and called the police after Mr. Kamara left.[9] The jury heard a recording of the 911 call.[10] Employee Minor-Allen did not tell police she saw a firearm when she called 911.[11] The police considered the incident a retail theft during their initial investigation.[12] Employee Minor-Allen first mentioned Mr. Kamara had a firearm when police interviewed her the following day.[13] The police re-classified the investigation to armed robbery following their interview with Employee Minor-Allen.[14]

***November 27, 2025 Family Dollar Robbery***

Abraham Kamara entered the Family Dollar store located at 560 Lancaster Avenue in Philadelphia around 5:45 P.M. on November 27, 2025. Mr. Kamara took a bag of dog food, cleaning supplies, and other items from the shelves.[15] Mr. Kamara tried to leave the store without paying for these items.[16] Family Dollar employee Jeffrey Senestant tried to stop Mr. Kamara from leaving the premises without paying for his items.[17] Family Dollar manager Araoye Oluwakemi

approached Mr. Kamara and Employee Senestant.[18] Mr. Kamara offered to pay the employees twenty dollars if they allowed Mr. Kamara to leave the premises with the unpaid for items.[19] The employees declined.[20] Mr. Kamara then offered the employees forty dollars.[21] They declined again.[22] Mr. Kamara became aggressive towards the employees.[23] He pulled up his shirt and revealed a firearm.[24]

Both Employee Senestant and Manager Oluwakemi swore under oath they saw Mr. Kamara with a weapon.[25] Employee Senestant swore Mr. Kamara slowly backed away towards the door with the unpaid for items and "flashed a weapon towards me."[26] Employee Senestant tried to grab the dog food Mr. Kamara placed on the ground.[27] Employee Senestant swore Mr. Kamara then "blatantly pulled out the weapon" and said "put my shit back."[28] Manager Oluwakemi also swore she saw Mr. Kamara's weapon.[29] She swore Mr. Kamara threatened her and Employee Senestant with his firearm.[30] The employees backed away.[31] Mr. Kamara drove away without paying for his items.[32]

The United States also presented video surveillance from Family Dollar.[33] The video shows Mr. Kamara entering the store consistent with Employee Senestant's description.[34] The video further shows Mr. Kamara attempted to leave the Family Dollar without paying for the merchandise.[35] The United States also showed the jury surveillance video of Mr. Kamara driving away after Employee Senestant confronted him.[36]

The jury acquitted Mr. Kamara on both charges related to the alleged robbery on November 23.[37] The jury also acquitted Mr. Kamara on one charge related to the robbery on November 27.[38] The jury convicted Mr. Kamara on Hobbs Act robbery related to the November 27 robbery of the Family Dollar store.[39]

## II. Analysis

Mr. Kamara moves for acquittal or a new trial under Rules 29 and 33.[40] He challenges the sufficiency of the evidence supporting his conviction for robbery of the Family Dollar on November 27, 2025.[41] Mr. Kamara argues the United States did not prove beyond a reasonable doubt he committed Hobbs Act robbery, but instead the evidence presented only showed he committed misdemeanor shoplifting.[42] Mr. Kamara argues the United States did not prove beyond a reasonable doubt Mr. Kamara used actual or threatened force, violence, or fear of injury.[43] He alternatively seeks a new trial based on the same asserted evidentiary deficiencies.[44]

Our Court of Appeals instructs us to examine the "totality of the evidence, both direct and circumstantial, and interpret the evidence in the light most favorable to the [United States] as the verdict winner" in a sufficiency-of-the-evidence claim under Rule 29.[45] "The jury's verdict shall be upheld when 'substantial evidence from which a rational trier of fact could find the essential[] elements of the crime beyond a reasonable doubt.'"[46] "The burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high."[47] We "do not weigh evidence or determine the credibility of witnesses in making [our] determination[]" on a Rule 29 motion for acquittal.[48]

Our colleagues counsel we may grant a new trial under Rule 33 to cure errors in jury instruction "of sufficient magnitude."[49] "[E]ven if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'"[50] But our Court of Appeals disfavors Rule 33(a) motions and instructs they "should be 'granted sparingly and only in exceptional cases.'"[51] In evaluating a Rule 33 motion, we "do[]

not view the evidence favorably to the [United States], but instead exercise[] [our] own judgment in assessing the [the United States'] case."[52]

We deny Mr. Kamara's Motion. The Supreme Court through Rule 29 does not allow us to reweigh the evidence or second-guess the jury's credibility determinations. The trial evidence, viewed in the light most favorable to the United States, allowed a rational jury to find the United States proved beyond a reasonable doubt Mr. Kamara used actual or threatened force, violence, or fear of injury to effectuate an unlawful taking of property. Mr. Kamara also has not shown a serious danger of a miscarriage of justice warranting a new trial under Rule 33.

**A. Mr. Kamara committed Hobbs Act robbery at the Family Dollar.**

The United States sought to prove Mr. Kamara committed Hobbs Act robbery. Congress criminalizes "obstruct[ing], delay[ing], or affect[ing] … "commerce, by robbery."[53] Congress defined robbery as "the unlawful taking… of personal property… by means of actual or threatened force, or violence, or fear of injury…."[54] The United States needed to prove beyond a reasonable doubt: Mr. Kamara took property from the store by way of robbery; Mr. Kamara did so knowingly and willfully; and, Mr. Kamara's actions obstructed, delayed, or affected interstate commerce.[55]

Mr. Kamara argues he engaged in retail theft not federal crimes.[56] The Pennsylvania General Assembly criminalizes taking merchandise offered for sale by a store with the intent of depriving the merchant of possession of the merchandise without paying the full retail value of the merchandise.[57] Mr. Kamara argues he did not make a show of force, violence, or a gesture raising a fear of injury.[58] We reject this argument. The United States questioned two eyewitnesses to the Family Dollar store conduct at trial. Both eyewitnesses swore Mr. Kamara showed them his weapon when the eyewitnesses tried to prevent Mr. Kamara from leaving with the unpaid merchandise. This testimony readily allowed the jury to conclude Mr. Kamara threatened force, violence, or fear of injury.

**B. The United States adduced evidence of Mr. Kamara's threat of force, violence, or fear of injury during the Family Dollar robbery.**

Mr. Kamara argues we must set aside the verdict because the United States did not adduce sufficient evidence he threatened force, violence, or fear of injury to commit robbery.[59] Mr. Kamara relies on the jury's conclusion he did not brandish a weapon during the Family Dollar robbery.[60] Mr. Kamara also argues the video evidence the United States presented does not show Mr. Kamara possessed or displayed a firearm.[61] The United States adduced direct testimony and circumstantial evidence to the contrary. We disagree with Mr. Kamara and defer to the jury's findings.

We instructed the jury "use, means more than mere possession…carry means Mr. Kamara had the firearm in his possession…" and "the firearm must have had some purpose or effect with respect to the robbery. The firearm must have at least facilitated or had potential to facilitate the robbery."[62] We further instructed the jury "[i]n considering whether Mr. Kamara used or threatened to use force, violence or fear, you should give those words their common and ordinary meaning…."[63] The United States adduced evidence allowing the jury to infer Mr. Kamara's use of the threat of force, violence, or fear of injury.

The United States adduced direct evidence allowing the jury to find Mr. Kamara guilty of Hobbs Act robbery. Both Employee Senestant and Manager Oluwakemi swore they saw Mr. Kamara with a weapon.[64] The jury could have chosen to believe both Employee Senestant and Manager Oluwakemi saw the firearm, considered Mr. Kamara's actions a threat of violence, or feared Mr. Kamara would use the firearm to injure them. The jury could also have chosen to believe, or disbelieve, Employee Senestant and Manager Oluwakemi.

The United States adduced circumstantial evidence allowing the jury to find Mr. Kamara guilty of Hobbs Act robbery. The jury also saw surveillance footage of the robbery. Mr. Kamara

argues the surveillance footage does not show a firearm. But the jury could have chosen to believe the surveillance footage shows circumstantial evidence Mr. Kamara had a firearm. The jury could have also chosen to believe the surveillance footage is circumstantial evidence bolstering the credibility of the eyewitness testimony regarding Mr. Kamara using the threat of force, violence, or fear of injury.

The Supreme Court through Rule 29 does not ask whether we would have drawn the same inference had we sat as the factfinder. It requires us to view the evidence in the light most favorable to the verdict and ask only whether a rational jury could draw the inference from the evidence. The Supreme Court in Rule 29 does not permit us to reweigh the testimony. We may have found differently. But we defer to the jury and the United States adduced sufficient evidence to allow a rational jury to find Mr. Kamara used the threat of force, violence, or fear of injury in the Family Dollar on November 27, 2025.

**C. Mr. Kamara is not entitled to a new trial under Rule 33.**

Mr. Kamara also moves for a new trial under Rule 33 on the same grounds. We deny the motion. We have broader discretion under Rule 33 than Rule 29 but we cannot grant a new trial simply because the evidence allowed competing inferences.[65] Mr. Kamara has not identified an erroneous jury instruction or other trial error creating a serious danger of a miscarriage of justice. Nor does our independent review reveal a basis to disturb the jury's verdict under Rule 33.

**III. Conclusion**

We defer to the jury's verdict based on sufficient evidence. The United States adduced sufficient evidence Mr. Kamara used the threat of force, violence, or fear of injury in furtherance of a robbery in the Family Dollar on November 27, 2025. We deny Mr. Kamara's motions consistent with Congress's mandate and the jury's findings as to Mr. Kamara's use of the threat of force, violence, or fear of injury.

[1] ECF 51 at 61.

[2] *Id*. at 62.

[3] *Id*.

[4] *Id*.

[5] *Id*.

[6] *Id*. at 79.

[7] *Id*. at 64.

[8] *Id*.

[9] *Id*. at 65.

[10] *Id*. at 74.

[11] *Id*. at 75.

[12] *Id*. at 78–79.

[13] *Id*.

[14] *Id*.

[15] *Id*. at 102–03.

[16] *Id*.

[17] *Id*. at 103–05.

[18] *Id*. at 122.

[19] *Id*.

[20] *Id*. at 92.

[21] *Id*. at 122.

[22] *Id*.

[23] *Id*. at 92, 93.

[24] *Id*. at 92, 117, 120.

[25] *Id*. at 92, 99, 106, 117, 120, 123.

[26] *Id*. at 92.

[27] *Id*.

[28] *Id*. at 92–93.

[29] *Id*. at 120, 123.

[30] *Id*. at 120.

[31] *Id*. at 124.

[32] *Id*. at 96, 115.

[33] *Id*. at 90–97.

[34] *Id*. at 90–93.

[35] *Id*. at 92.

[36] *Id*. at 95–96.

[37] ECF 52 at 142–43.

[38] *Id*.

[39] *Id*.

[40] ECF 49.

[41] *Id*. at 4.

[42] *Id*.

[43] *Id*. at 10.

[44] *Id*. at 4.

[45] *United States v. Dougherty*, No. 19-64, 2023 WL 2226780, at *5 (E.D. Pa. Feb. 24, 2023) (quoting *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009)), *aff'd sub nom., United States v. Henon*, No. 23-1463, 2024 WL 2746981 (3d Cir. May 29, 2024)).

[46] *Id.*

[47] *Id.*; *see also United States v. Pawlowski*, 27 F.4th 897, 902 (3d. Cir. 2022).

[48] *United States v. Zayas*, 32 F.4th 211, 216–17 (3d Cir. 2022) (alteration in original) (quoting *United States v. Gambone*, 314 F.3d 163, 169–70 (3d Cir. 2003)).

[49] *United States v. Ortiz*, No. 22-381, 2025 WL 449534, at *2 (E.D. Pa. Feb. 10, 2025) (quoting *United States v. Brown*, No. 90-144, 1991 WL 7378, at *4 (E.D. Pa. Jan. 22, 1991)).

[50] *United States v. Silveus,* 542 F.3d 993, 1004–05 (3d Cir. 2008) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)).

[51] *Id.* at 1005 (quoting *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987) (citations omitted)).

[52] *Id.*

[53] 18 U.S.C. § 1951(a).

[54] 18 U.S.C. § 1951(b)(1).

[55] 18 U.S.C. § 1951(a) –(b)(1).

[56] ECF 49 at 8.

[57] 18 Pa. C.S.A. § 3929(a).

[58] ECF 49 at 5.

[59] *Id*. at 6.

[60] *Id*. at 7.

[61] *Id*.

[62] ECF 52 at 109.

[63] *Id*. at 103.

[64] ECF 51 at 92, 99, 106, 117, 120, 123.

[65] *See United States v. David*, 222 F. App'x 210, 215 (3d Cir. 2007) ("[O]ur review in the Rule 33 context is in some ways less constrained than under Rule 29.").